I would like to draw your attention to, number one, the accident with Fisher, and then the expert testimony that was rendered in this case. I think that's the crux of the matter as far as who this injured individual was and how he was injured and what was the result of his injury. I would ask that the decision of the commission that adopted the arbitrary decision to deny him the responsibility be reversed. Number one, the accident. This gentleman, Randall Taylor, 39 years old, had no prior history of having back complaints or any knee problems. That is clear from the record. It is undisputed. It is also undisputed that an event happened on December 29, 2014. Whether you take the petitioner's version or the witness' version, the printer fell on the petitioner's leg. The medical records clearly state that the left leg was hyperextended. Hang on a second before I get too far into this. There were also two doctors who testified relative to this matter. Dr. Shapiro, as I understand it, opined the claimant's back condition was related to his employment accident. Dr. Levin opined it was not causally connected to the work-related accident. You're relating the history to us that you are alleging supports the finding of a back problem. And yet, according to the treatment records, the claimant did not initially report any pain to his back or radiating down his leg at all. He only reported pain to the knee. So isn't that a little inconsistent with this history you're referring to? Your Honor, I respectfully submit that he reported generalized pain to his left leg. They did not know the etiology of the cause of it. If you take a look at the medical records, as you state, they do initially try to diagnose him as a knee strain. Again, he complained of left leg pain from the date of the accident until he was given a definitive diagnosis in April 13, 2005. Please take a look at the record. They did a multitude of tests, CAT scans, January 10th of the knee or leg, MRI of the leg, 1-10-2005. They did a Dr. Venus study to try to get to the cause of his left leg pain on 3-19. They did an ultrasound on March 29th. Finally, they do an EMG on March 16th, 2005, and they have something. Finally, something is abnormal. An explanation for left leg pain. The EMG showed the callopathy coming from the lower regions. April 13th, or rather, April 12th, he has an MRI done, and that definitively shows the grenape L45, L5S1. The cause of his pain according to the doctor that he was referred to by the emergency room. The emergency room was sent to by a respondent lawyer. Look, we understand that there is a dispute between the experts as to whether there is a causal connection between this event that took place at work and his back injuries. Are you going to tell us why it's against the manifest way to the evidence? Yes, sir. Why? I would ask that you scrutinize the evidence. And that's exactly what you want us to do. You want us to re-weigh the evidence. And that's not our job. I believe that they did not re-weigh all the evidence. And I would ask you to take a look, not only at what happened prior to those opinions, prior to those treatments, the depositions, and take a look at the totality. I'd ask you to look at the entire record with all due respect. Shapiro opined that dropping a printer on his knee wouldn't cause a disc to herniate. Now, who says it will? Your expert says it will. The commission decided that they were going to go along with Shapiro. Shapiro is? They were going to go along with Levin. So, I mean, other than asking us to re-weigh the evidence, I don't understand what it is you're asking us to do. I am asking you, as you did in the recent Throes v. IWCC decision, you set aside the commission's decision. We've done that before. Yes. Because based on the entire record of this case, as it stated in that case, it's clearly evident, plain and indisputable that the evidence points in only one direction. That this gentleman had an injury. He was not able to get a clear, definitive diagnosis. It was no fault of his own. Finally, the doctor, again, he's not chosen by evidence. A doctor gives him a definitive diagnosis on April 13, 2005. We found the cause of the pain. He has the surgery. Initially, you might think it was a spectrum. After that surgery, he's able to go back to work. It relieves his pain. Unfortunately, he had complications from the surgery. What I'm asking you to do is take a look at the entire record. Just to clarify something, didn't the claimant experience and report a reoccurrence of pain after each of the surgical procedures on his back? The last two, yes. First one, he had complete relief. He went back to work. Unfortunately, we did not have a good result. Again, as explained by the doctors that were treating him, there were only one referral chain, all symptoms, again, by the spine. Again, if you take a look at the testimony from Dr. Shapiro, he gives a clear and concise explanation of how it is. We're not suggesting that if the commission had sided with Shapiro, that that would be against the manifest way to the evidence. Manifest way to the evidence doesn't mean that there's a right answer or a wrong answer. I mean, whoever the fact finder is has to weigh this. And then they have to determine whether they're going to put the weight. And they put the weight on the employer, the employer's expert, and rejected your expert. But they rejected the entire record. I don't understand what you mean by the fact that they rejected the entire record. Everything leading up to when Dr. Levin examined this individual for one time, four months after the accident, and totally discounted all the objective findings, the MRIs, the EMTs. His opinion, I just make this plot, because he looks at that and doesn't acknowledge it. He's looking straight at it. He just says that this individual has degenerative fist disease. He had it before, but it was asymptomatic. Now it's symptomatic. All right. So you're saying in response, you know, you're doing, I think, an admirable job of what you have to. I mean, what my learned colleague says is correct. Manifest way to the evidence is about who's right or wrong. So you're saying you also look, we should be looking at the chain of events in addition to the other evidence, which obviously we will. As you did in the gross decision and scrutinized the opinions in the context of the medical terminology, taking into consideration that this individual had no problems December 28, 2004. This problem started December 29, 2004. And with regards to these experts, the expert opinion that you stated in recent meetings is only as valid as the facts that are taken into consideration. Dr. Shapiro's opinion has a better foundation, more valid reasons. Is that what the commission thought about him? No, it would not be. Does it have a right to determine? Absolutely, Your Honor. And I would ask this court to mandate its right to review the phrenology, to review the medical evidence. If they are not infallible, they may go to state. And I would go as far as to say that Dr. Levin's opinion, it has to be expected of the nature, because it just doesn't take into consideration all the facts in this. Well, not to parse words with you, but didn't the arbitrator find the two of the three criteria underlying Dr. Shapiro's opinion was not supported by the medical records and the other evidence? If you were to take a look at it, I agree that's what he said, but I disagree that that's the right conclusion. If you take a look at his criteria and then look back at the records, I believe that he did say that in his decision, but again, that was the wrong conclusion. And that's why I respectfully request that this decision be made. Thank you. Counsel, please. May I please report to the panel? Counsel just mentioned that expert testimony in this case is the cause of the argument, and I disagree with that. He said opinions are only as valid as the facts taken under consideration. That I agree with. The most important, I think that the most important evidence in this case is that of the eyewitness, Mike Amir. Mr. Amir testified essentially that his testimony contradicted the petitioner's growing version of what happened in the accident. Mr. Amir told the arbitrator that the petitioner did not fall to the ground, there was no trauma to any other part of his body other than his knee. Once the commission accepted that testimony, and they reasonably accepted that testimony, there was no basis given in any of the evidence that Michael Amir had lied or been impeached. He considered himself a friend of the petitioner's guilt. Mr. Amir testified that the only thing that occurred in this incident was that there was a contact between the petitioner's knee and the commission. Would that necessarily preclude that he could have twisted or something in the reaction? Would that necessarily, as a matter of fact, preclude a possible back injury or back sprain? I suppose Mr. Amir could not say whether or not the petitioner twisted his stand on this justice, but everything else that follows along with what Mr. Amir said. The history that the petitioner gave me in the emergency room denied any trauma to anything other than his knee. And this continues and continues and continues. So his most contemporaneous history belies what he tries to tell us later. So I would say that Mr. Amir's testimony was even more thoughtless as credible by what the petitioner himself said immediately following the occurrence. Right, so you have the issue of whether or not there was trauma to the back initially in the first place. As we know, we've already gone back and forth about the experts. One says it was causally connected. Others says it was not. What about his argument while notwithstanding that the chain of events would support his case because the claimant had no pain in either his left leg or back prior to this alleged accident? What I would submit to the panel about that is, although that may seem to be a good argument on the petitioner's part, we have a case law, the petitioner himself has tried to argue that the case law supports him in this, but we have such a time span between December 29th and into April that there's even any mention by the petitioner of his back. That's a long span, and I don't think that there's any case law that the petitioner came up with to support that there was a time in the past that just because he didn't have pain before and four months later he has it to support his position. I would say that that is a big enough gap, Mr. Justice, that you can't rely on in this case. Further, and when we talk about the medical evidence in this case, if you believe Michael O'Neill, you can't accept the opinion of Dr. Shapiro because Dr. Shapiro, as Justice mentioned earlier, Dr. Shapiro has a three-pronged opinion, and one of those opinions is that there was sufficient trauma at the time of the accident to cause this. He is assuming that the petitioner did fall to the ground because he himself said, just a petitioner's strike by a scientific computer printer striking his knee would not be sufficient to cause a herniated disc. We also have other evidence here that supports the Commissioner's opinion, an objective medical evidence. The EMG done in March of 2005 shows findings at every level above L5-S1, and that's the level that Dr. Shapiro chooses to say is the cause of the petitioner's problem, in spite of the fact that comparison of the MRIs between April 2005 and November 2005, a month before Dr. Shapiro does the surgery, shows that this is actually smaller and not causing any significant stress on the nerve end. There's an absence of a recurrent disc in October of 2006. At that level, yes, Dr. Shapiro went on to do more surgeries. And in fact, as Guillermo mentioned, there were recurrent complaints by the petitioner of blackening after each surgery. Now, after the first surgery, there was a longer gap, but each time, this occurred. So I think Dr. Shapiro has shown that he's not a more credible witness in this case. In any event, it's up to the Commission to judge the credibility of the witnesses, the expertise of the doctors, and to weigh their evidence. Absolutely. Absolutely. And so your argument in sum is the decision's not against the men, it's for the evidence. Correct. There is sufficient evidence in the record to support the decision of the Commission. I think that's it. Unless there are questions from the people, I'll rise. Thank you. Thank you. Dr. Palma, please. Thank you, Dr. Palma. Again, as you say, the Commission has agreed, I will request that you take a look at the record. This is not a case where an individual falls on July 1 and doesn't get any treatment until September. This is an individual who gets medical treatment right away. Like most people, I have pain. But not for his back. Or his pain, your honor. Well, not his back. Or his left leg pain. There's no mention of my back in the medical record. Now, what were the three criterias that Shapiro used to determine whether there's causation? First one is a reasonable and realistic onset of the claimant's symptoms. The symptoms didn't occur until four months plus after the event. Second one is a definite diagnosis. And the last one is sufficient trauma at the time of the accident to cause the claimant's condition. And he admits that a printer falling on the guy's knee is insufficient to cause the herniation. So now we're missing two of his own three criteria. Your honor, if I could address each one individually. Number one, the symptoms. In his direct and under process, Dr. Shapiro states the symptoms of a herniated disc are most often at this level. The left leg pain. And this was a left paracentral disc herniation. Not back pain. This injury does not manifest itself necessarily as back pain. Number one. He had those symptoms for three months. And five to six doctors saw him. Neurologists, pain specialists, they got him at Compass Regional Pain Syndrome. They did not know. The doctor did not know. I think it's a fair burden for this patient to know who's a clerk and doing payroll. Number two. Definitive diagnosis. He was given a definitive diagnosis in April by his doctor. April 13th after he had the MRI done on April 12th, 2005. Again, definitive diagnosis. And his family will know that. The surgery relieved the symptoms. He has never had knee complaints, knee surgery on either knee, either leg. Knee pathology. Trauma. Wait a minute. The commission didn't say that his injury to his knee wasn't causally connected. They said that the condition of his back wasn't causally connected. So what does the fact that he didn't have prior knee problems have to do with the issue? We have to decide. Well, at the end of the day, there was no knee pathology. That's just my point. He suffered an injury where the medical records document hyperextended his knee. Well, I mean, assume we believe his version. That assumes that somebody believes his version of whether he hyperextended or he didn't. Amir just says he never fell to the ground. Amir, I admit he did say that. And the commission believed it. Whether he hyperextended his back and his leg, the twisting injury, Dr. Shapiro clearly states that the twisting of the injury, the knee is a visual, but it's a generative disability. He is a pathologist. He does take that further than that. Yeah, and he also said in cross-examination that if he didn't twist, a printer hitting his knee could not cause this herniation. In his testimony, my client said he fell. The other gentleman said, I just saw the printer hit him. And he didn't see him fall is what he said. And the commission said he believed it. They believed Amir, not him. Just over 29, he was left in our office. I mean, is your argument that because he had a back condition, at some point in time after he had an injury at work, therefore the back condition was caused by the injury at work? Is that your argument? What I'm saying is that the injury, Mr. Clayton, I've done before, set in motion the back condition. Aggravated and pre-existing condition. And that's what all these are their documents. The response sentence of the emergency room, the emergency room sentence of Dr. Metrick, Metrick sentenced Shapiro. That's their opinion. They're treaters. That's what they said. And all of them state, lumber, the neurologist, the pain specialist, all of them say, this is your problem. And this is what we have to do to fix it. Narcotics, pain meds. And thank you for your time. Thank you. I take the matter under advisement for disposition. Clerk, please call the next case.